**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| GERALD D. FOLEY, | ) | CASE NO. 5:22-CV-00753-CEF |
| Plaintiff, | ) | |
| | ) | JUDGE CHARLES ESQUE FLEMING |
| v. | ) | |
| | ) | MAGISTRATE JUDGE |
| | ) | JENNIFER DOWDELL ARMSTRONG |
| COMMISSIONER OF SOCIAL | ) | |
| SECURITY ADMINISTRATION, | ) | **REPORT AND RECOMMENDATION** |
| Defendant, | ) | |
| | ) | |

## I.      INTRODUCTION

Plaintiff Gerald D. Foley ("Mr. Foley") seeks judicial review of the final decision of the Commissioner of Social Security ("the Commissioner") denying his applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). (ECF Doc. 1). The District Court has jurisdiction under 42 U.S.C. §§ 1383(c) and 405(g). Pursuant to Local Civil Rule 72.2, this matter was referred to a magistrate judge for preparation of a Report and Recommendation, and it was subsequently reassigned to me pursuant to General Order No. 2022-14. For the reasons set forth below, I RECOMMEND that the Court AFFIRM the final decision of the Commissioner.

## II.     PROCEDURAL HISTORY

On February 3, 2020, Mr. Foley filed applications for DIB and SSI, alleging a disability onset date of September 16, 2019. (Tr. 13, 186-204).[1] His application was denied initially on August 4, 2020, and upon reconsideration on September 24, 2020, and Mr. Foley requested a

---

[1] The transcript referred to in this Report and Recommendation can be located at ECF Doc. 5 on CM/ECF.

hearing before an administrative law judge ("ALJ"). (Tr. 114-23, 130-39). On February 12, 2021,

an ALJ held a hearing, during which Mr. Foley, represented by counsel, and an impartial

vocational expert testified. (Tr. 32-81). On March 31, 2021, the ALJ issued a written decision

finding Mr. Foley was not disabled. (Tr. 13-26). The ALJ's decision became final on March 18,

2022, when the Appeals Council declined further review. (Tr. 1-6). Mr. Foley asserts the following

assignments of error in his merits brief:

> 1. The appointment of Andrew Saul as Commissioner of the Social Security
>    Administration violated the separation of powers. As such, the decision in
>    this case by an ALJ who derived her authority from Andrew Saul was
>    constitutionally defective.
>
> 2. The ALJ committed harmful error when her RFC failed to consider the
>    effect of Foley's chronic pain and obesity on his ability to engage in
>    substantial gainful activity on a full-time and sustained basis.

(ECF Doc. 9, PageID#648). On September 27, 2022, Mr. Foley notified the Commissioner via e-

mail that he was withdrawing his first assignment of error, *i.e.,* the separation of powers argument.

(ECF Doc. 10, PageID#680 n.1). Because Mr. Foley has withdrawn his first assignment of error,

the only assignment of error that will be addressed in this Report and Recommendation is whether

the ALJ erred by failing to consider the effect of Mr. Foley's chronic pain and obesity upon his

ability to engage in substantial gainful activity on a full-time and sustained basis.

## III.    BACKGROUND INFORMATION

### A. *Personal, Educational, and Vocational Experience*

Mr. Foley was born in April 1980, and he was 39 years old on the alleged onset date. (Tr.

25). He lives with his wife and two children. (Tr. 41). At the time of the hearing, Mr. Foley testified

that he had a driver's license. (*Id.*). He has a seventh-grade education, and he underwent some

"minor" vocational training. (Tr. 42). He has a CDL, but he did not receive any certificates,

licenses, or degrees from schooling. (*Id.*). He previously worked as a semi-truck driver and pickup truck driver. (*See* Tr. 50).

### B.  *Relevant Hearing Testimony*

#### 1.  <u>Mr. Foley's Testimony</u>

Mr. Foley testified that he was able to drive, but he was limited to driving approximately 50 miles before sitting became too difficult due to his need to adjust. (Tr. 41). He stated that he was unable to work due to his spine pain and rheumatoid arthritis, which affected his hands, knees, feet, and balance. (Tr. 52). He further testified that he has asthma and COPD, which causes him to stop and catch his breath when he walks. (*Id.*). He also testified that his back pain made it difficult to sit in one position for too long, and he had to constantly shift positions. (*Id.*). He stated that he has difficulty lifting a gallon of milk. (Tr. 53).

Mr. Foley testified that epidurals did not solve his chronic pain, but medical marijuana alleviated 80% to 90% of his chronic pain. (*Id.*). He stated that he had not been receiving treatment for his arthritis. (Tr. 53). In fact, he testified that he had never seen a rheumatologist because he could not find one that would accept his state insurance. (*Id.*). He also stated that he had been diagnosed with arthritis 21 years prior to his administrative hearing. (*Id.*). He testified that his arthritis makes it difficult for him to grip objects. (Tr. 56). He also testified that he had so much pain in his knees, feet, and hips that – when he attempts to take a step –  his joints will lock, resulting in loss of balance. (*Id.*).

Mr. Foley stated that in 2020, he did some woodworking in his basement as a "hobby job" making "knickknacks" like small rocking horses and hanging hearts for family and friends. (Tr. 51). He testified that he smoked a pack and a half of cigarettes daily. (Tr. 57). He stated that he could dress himself and sweep the floors occasionally. (Tr. 61). He testified that he did 20% of the

cooking for his family, but he struggled to stand long enough to do more. (*Id.*).  He also testified that he could not stand long enough to wash dishes or bend over to do the laundry. (*Id.*). He stated that he watched television during the day. (Tr. 62). He has not done woodworking in several months because the cold aggravates his rheumatoid arthritis symptoms. (*See id.*). On a couple of occasions during the summer when he went fishing with his children, he used an electric wheelchair. (Tr. 62-63).

### 2.  <u>Vocational Expert's Testimony</u>

The vocational expert ("VE") testified that Mr. Foley's past relevant work included employment as a semi-truck driver, and composite jobs of the truck driver, heavy equipment operator, pickup truck driver, or vehicle unloader. (Tr. 67-68). The ALJ asked the VE to consider a person with Mr. Foley's age, education, and vocational background who would be limited to performing work at a light exertional level, with the additional limitations of occasionally stooping, kneeling, crouching, or crawling; occasionally reaching overhead with his right upper extremity; frequently reaching in other directions with his right upper extremity; frequently ramps or stairs; never climbing ladders, ropes, or scaffolds; no more than occasional exposure to extreme cold, poor ventilation, or pulmonary irritants; and no exposure to workplace hazards such as unprotected heights. (Tr. 69). The VE opined that the individual could not perform Mr. Foley's past relevant work, but he could perform other work as an office cleaner, mail clerk, or assembler of small products. (Tr. 69-70).

As a second hypothetical, the ALJ asked the VE whether a person with Mr. Foley's age, education, and vocational background with the same limitations as the first hypothetical, as well as the additional limitation that the individual could stand or walk for four hours in an eight-hour workday and must be permitted to alternate between sitting and standing positions every 30

minutes or more, could perform other work. (Tr. 70). The VE opined that this individual would be able to perform sedentary jobs such as a document preparer, table worker, or addresser. (Tr. 70-71). The VE testified that if Mr. Foley was reduced to the sedentary level of exertion with alternation to a standing position up to five minutes an hour, he could still perform the same three jobs. (Tr. 71). The VE also testified that employers would find being 20% off task unacceptable. (Tr. 74). He further stated that a person could not miss more than 2 days a month. (Tr. 75).

Mr. Foley's counsel asked the VE whether a hypothetical individual that required an electric scooter in the workplace would require some type of workplace accommodation. (Tr. 79). The VE opined that an electric scooter would require an accommodation for work-related purposes because sedentary jobs required some moving around with objects. (Tr. 79-80).

### C. *Relevant Medical/Non-Medical Opinion Evidence – State Agency Findings[2]*

Dr. Neiger, a state agency medical consultant, found that Mr. Foley was capable of performing a reduced range of light work. (Tr. 88-89). Dr. Neiger found that Mr. Foley could lift and/or carry 20 pounds occasionally and 10 pounds frequently; could stand, walk, or sit about six hours in an eight-hour workday; frequently climb ramps or stairs and balance; occasionally stoop, kneel, crouch, or crawl; and could never climb ladders, ropes, or scaffolds. (Tr. 88). Finally, Dr. Neiger found that Mr. Foley should avoid concentrated exposure to extreme cold, fumes, odors, dusts, gases, and poor ventilation. (Tr. 89). Dr. Schultz, a state agency medical consultant, affirmed the findings of Dr. Neiger. (Tr. 103-05).

### D. *Relevant Medical Evidence*

---

[2] This summary only includes the findings from state agency physicians regarding Mr. Foley's functional limitations, not his mental limitations, because he does not appear to challenge the ALJ's findings regarding his alleged mental impairments.

In this proceeding, Mr. Foley primarily challenges the ALJ's findings with respect to his obesity and his chronic pain in the ALJ's RFC assessment. (ECF Doc. 9, PageID#659-66). The ALJ summarized Mr. Foley's health records and symptoms related to these issues as follows:

> On October 23, 2018, the claimant underwent a right shoulder limited glenohumeral debridement, subacromial decompression and distal clavicle excision. He returned to work the next day. At a November 2, 2018 follow up, he reported that his shoulder felt better after surgery. He had "almost normal range of motion." Motor and sensory exams were normal. The plan was to wean from narcotic medications and begin physical therapy. The claimant was released to full work duty by November 2, 2018. (1F/1-4)

> The claimant treated with primary care source Brian Cain, MD in 2019. (3F/1-14) Records indicate the claimant was diagnosed with asthma/COPD and rheumatoid arthritis since August 2016. The claimant continued to smoke 1.5 packs of cigarettes per day despite breathing disorders. He used a ProAir inhaler. His body mass index was 42, which is considered obese. (3F/2-4, 10) Spirometry testing in March 2019 was interpreted as "normal." (3F/17) In June 2019, HbA1C was 5.9% (3F/18)

> The claimant alleged disability beginning in September 2019. On September 12, 2019, the claimant sought emergency treatment for lower back pain and sciatica that began on day earlier. He felt a "pop" while working, followed by pain at a 10/10 level of severity. An exam was normal except for lumbar tenderness. The claimant had normal gait, negative straight leg raise, and he was neurovascularly intact. He moved all extremities well. X-ray imaging was not recommended, but the claimant was advised to obtain an outpatient MRI. He was given Dilaudid for pain at the hospital, with prescribed steroids to take at home. (5F/10-12) He followed up with primary care source Dr. Cain on September 16, 2019. He had reduced spinal range of motion and muscle spasms. Gait and station were normal. There was unspecified myalgia/joint pain. The claimant was advised to stop smoking and lose weight. Dr. Cain specifically noted that weight contributed to back pain. (3F/1-3)

> On October 18, 2019, the claimant sought emergency treatment for back pain. He reported that he fell three feet off the back of a truck. He initially landed on his feet, but then slipped and fell. He had difficulty ambulating, but clinical exam was otherwise relatively normal. Straight leg raise was negative. The claimant had normal range of motion in the extremities. He was neurovascularly intact with no focal neurologic deficits. Imaging showed "normal thoracic spine." The claimant was diagnosed with thoracic sprain and acute on chronic back pain. He was given a Toradol injection, and prescriptions for Zanaflex (for muscle spasms) and Ultram for home. (5F/16-21)

6

Dr. Cain ordered physical therapy. The claimant attended a physical therapy evaluation on September 26, 2019 and started therapy. (4F/15-17)

In October 2019, the claimant consulted orthopedic specialist Anthony McKeen, DO. He reported chronic back pain that radiated to his fingers and toes. On exam, he ambulated normally. Lumbar spine inspection showed no swelling and normal alignment. There was tenderness in some areas of the lumbar spine. Active and passive range of motion was normal, but increased pain. Motor Strength was 5/5. Sensation and reflexes were normal. Straight leg raise was negative bilaterally. The claimant was neurovascularly intact. He was advised to restart physical therapy and continue steroids and muscle relaxers. He was referred to pain management for possible epidural steroid injections. (9F/43-46)

The claimant attended only four of sixteen recommended physical therapy visits in November 2019, with no shows or cancellations at the fifth, sixth, and seventh scheduled sessions and no further sessions. (4F/6-12)

On January 13, 2020, the claimant consulted Paul Shin, MD at the Cleveland Clinic Medina Spine Center. He reported a 20-year history of worsening low back pain. Pain was located in the middle lumbar region and gluteal region and radiated to the bilateral lower extremities along the lateral aspect and posterior aspect to the level of shin. The pain was described as burning, radiating, sharp, shooting, tingling and cramping. The pain intensity was rated 9/10. Pain was exacerbated by activity, standing, walking, sitting, arising from a sitting position, lifting, lying and sleeping and relieved by no known factors. The claimant reported no relief when he had two weeks of physical therapy. He reported that he ceased therapy because he was told not to return. An exam of the neck was normal except for tenderness. Exam of the back showed reduced range of motion and tenderness. Straight leg raise was negative. Extremities exam was normal. Motor and sensory functioning was intact. The claimant was slow to stand and his gait was slow. The assessment included chronic pain syndrome, diffuse myofascial pain syndrome, chronic back pain, and bilateral thoracic back pain. Dr. Shin suggested a rheumatology workup. No medications or other treatment were prescribed. (15F/1-8) The claimant testified that he never follow through with the recommended rheumatology referral, citing inability to find a doctor who took his insurance and accepted new patients.

The claimant established care with a new family doctor in February 2020. (8F/11) A February 2020 HbA1c level was 6.5%. The claimant started Jardiance. He reported polyuria and increased appetite, but denied fatigue or vision issues. In May 2020, Hba1c rose to 7.2%. The claimant reported his blood sugar levels were better controlled when he took his wife's medication. He asked to stop Jardiance and start Steglatro, and his physician made this change. The claimant was also advised to start Metformin. The claimant also started Gabapentin for his reports of neuropathic pain. (9F/7-13)

The claimant established care at Mercy Pain Management in March 2020. He reported a pain level of 7/10. Low back pain radiated to the bilateral feet. Activity increased pain and rest reduced pain. There were no bowel or bladder issues. The claimant did not use ambulatory aides. The claimant admitted that he did not complete physical therapy. He reported, "it does not work and does not want to go." The claimant did not have a medical marijuana card at that time, but indicated he self-medicated with edible marijuana. He smoked two packs of cigarettes per day. An exam showed normal mood and affect. The claimant had slow deliberate gait with a forward flexed posture. He was unable to stand erect. There was pain with lumbar range of motion. Strength was 5/5 in the lower extremities. There was no clonus. Straight leg raise, Faber sign, and Patrick sign were all negative. The physician noted that the claimant had a history of medical noncompliance as cited on the referral. The claimant asked for medical marijuana information, and he was given information about local programs. David Gutlove, MD ordered updated imaging. (8F/6-10)

March 2020 lumbar x-rays showed "no acute lumbar spine abnormality. Overall minimal to mild degenerative change of the lumbar spine." (8F/27) A June 2020 MRI of the lumbar spine showed "Mild degenerative disc disease with a left foraminal disc protrusion at the L2-3 level with resultant foramina/ narrowing and slight posterior displacement of the 12 nerve root. Mild degenerative disc disease and facet arthropathy elsewhere within the lumbar spine…." There was no spondylolysis or spondylolisthesis. (8F/23-24) A June 2020 MRI of the thoracic spine showed "mild to moderate degenerative disc disease with small disc protrusions from the T8-9 level through the T10-11 levels. No acute osseous abnormality." (8F/25)

The claimant underwent spinal epidural steroid injections in July and August 2020. (8F/19-21) He denied any improvement with injections. (14F/1)

At an August 2020 primary care visit, the claimant admitted to noncompliance with several aspects of treatment. He admitted that he stopped taking diabetic medication, stating, "My sugars are better." He admitted to never establishing with a rheumatologist, citing back pain with traveling that far. In regards to COPD, he admitted to only attending one pulmonology visit, and not even recalling what he was supposed to do in regards to treatment. He "took himself off all inhalers months ago except Albuterol." He asked for inhaler refills. When advised to follow up with pulmonology, he "refused," stating, "I only come to the doctor when I need something." He agreed to restart Symbicort, citing its efficacy in the past. He continued to smoke cigarettes. The claimant was being treated for back pain at pain management with epidural steroid injections. He requested a different NSAID for pain and Voltaren gel. He also took Gabapentin. On exam, the claimant had normal gait. Strength was 5/5. Reflexes were normal. His body mass index was 42.

A behavioral health screening was negative for any mental disorders. He was treated conservatively with medications. (9F/3-6)

8

The claimant consulted pain management physician Mark Pellegrino, MD in November 2020. He denied relief from injections, physical therapy, or other measures. He also reported an increase in right shoulder pain with bursitis and tendonitis. Right shoulder range of motion was reduced. Exam of all other extremities was normal. Balance and gait were normal. There was tenderness and reduced range of motion in the lumbar spine, but inspection of the cervical and thoracic spine was normal. Straight leg raise remained negative. Strength and reflexes were normal. Dr. Pellegrino noted, "I reviewed my findings with Mr. Foley. He's having a lot of chronic pain syndrome findings and I reviewed his lumbar spondylosis, disc disease and history of herniated disc, right shoulder bursitis and rotator cuff tendonitis and arthritis changes. I'm not finding any acute radiculopathy today. Given his chronic pain interfering with his function, he is a candidate for medical marijuana, and he is particularly interested in this treatment so I registered him. He says he qualifies for disability so we'll indicate the indigent status, and I instructed him on potential benefits and side effects and treatment goals. I'll monitor his progress." (14F/1-3)

On December 6, 2020, the claimant sought emergency treatment for elevated blood sugar. He reported that blood sugar range from 300-400 for the past two months. On the day he presented to the hospital, he took his wife's insulin and blood sugar slowly decreased. When an ambulance arrived, blood sugar level was 142. The claimant also complained of muscle spasms. A clinical evaluation was normal. The claimant remained stable at the hospital. He was given IV fluids and muscle relaxers with improved symptoms. Blood sugar was 149 at the time of discharge. The claimant was advised to follow up as an outpatient. (12F/13-15)

The most recent treatment of record was a follow up pain management visit with Dr. Gutlove on December 30, 2020. The claimant returned to obtain disability paperwork. He arrived in an electric scooter, but Dr. Gutlove did not prescribe this device or recommend it. The claimant reported widespread joint pain in his back, shoulders, hands, and knees. He took muscle relaxers from a primary care sources. He had a medical marijuana card. Dr. Gutlove provided a single prescription for Norco, but advised the claimant see Dr. Pellegrino if he wanted to continue to use medical marijuana and wanted pain medication. Dr. Gutlove indicated that he completed disability paperwork on two occasions. However, neither the claimant nor his attorney submitted these assessments. (13F/1-5)

(Tr. 18-22).

## IV.    THE ALJ'S DECISION

In her March 31, 2021 decision, the ALJ made the following findings:

1.  The claimant meets the insured status requirements of the Social Security Act through December 31, 2024.

2. The claimant has not engaged in substantial gainful activity since September 16, 2019, the alleged onset date (20 CFR 404.1571 *et seq*., and 416.971 *et seq*.).

3. The claimant has the following severe impairments: degenerative disc disease of the lumbar and thoracic spine; chronic pain syndrome; osteoarthritis, impingement syndrome, and bursitis of the right shoulder, status post arthroscopy; diabetes mellitus type II; chronic obstructive pulmonary [d]isease (COPD)/ asthma; and obesity (20 CFR 404.1520(c) and 416.920(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except: He can stand or walk for four hours in an eight hour workday, but must be permitted to alternate between seated and standing positions at intervals of thirty minutes or greater while remaining at the work station and on task. He can occasionally reach overhead with his right upper extremity, and can frequently reach in other directions with his right upper extremity. He can frequently climb ramps or stairs, but can never climb ladders, ropes, or scaffolds. He can occasionally balance, stoop, kneel, crouch, or crawl. He can work in a setting with no more than occasional exposure to extreme cold, poor ventilation, or pulmonary irritants such as fumes, odors, dusts, or gases. He must avoid all exposure to workplace hazards such as unprotected heights. Due to the symptoms of his physical impairments and side effects of medication, he cannot perform tasks at a production rate pace (as in assembly line work) or with strict production quotas (as in piece rate work).

6. The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

7. The claimant was born [in 1980] and was 39 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date (20 CFR 404.1563 and 416.963).

8. The claimant has a limited education (20 CFR 404.1564 and 416.964).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a

finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569(a), 416.969, and 416.969(a)).

11. The claimant has not been under a disability, as defined in the Social Security Act, from September 16, 2019, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

(Tr. 15-26).

## V. LAW AND ANALYSIS

### A. *Standard of Review*

"After the Appeals Council reviews the ALJ's decision, the determination of the council becomes the final decision of the Secretary and is subject to review by this Court." *Olive v. Comm'r of Soc. Sec.*, No. 3:06 CV 1597, 2007 WL 5403416, at *2 (N.D. Ohio Sept. 19, 2007) (citing *Abbott v. Sullivan*, 905 F.2d 918, 922 (6th Cir. 1990); *Mullen v. Bowen*, 800 F.2d 535, 538 (6th Cir. 1986) (*en banc*)). The Court's review "is limited to determining whether the Commissioner's decision is supported by substantial evidence and was made pursuant to proper legal standards." *Winn v. Comm'r of Soc. Sec.*, 615 F. App. 315, 320 (6th Cir. 2015) (quoting *Cole v. Astrue*, 661 F.3d 931, 937 (6th Cir. 2011)); *see also* 42 U.S.C. § 405(g). "Substantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (quoting *Cutlip v. Sec'y of HHS*, 25 F.3d 284, 286 (6th Cir. 1994)). If the Commissioner's decision is supported by substantial evidence, it must be affirmed, "even if a reviewing court would decide the matter differently[.]" *Cutlip* at 286; *Kinsella v. Schweiker*, 708 F.2d 1058, 1059-60 (6th Cir. 1983).

In addition to considering whether the Commissioner's decision was supported by substantial evidence, the Court must determine whether the Commissioner applied proper legal standards. Failure of the Commissioner to apply the correct legal standards as promulgated by the regulations is grounds for reversal. *See, e.g.*, *White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 281 (6th Cir. 2009); *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2006) ("Even if supported by substantial evidence, however, a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.").

Finally, a district court cannot uphold an ALJ's decision, even if there "is enough evidence in the record to support the decision, [where] the reasons given by the trier of fact do not build an accurate and logical bridge between the evidence and the result." *Fleischer v. Astrue*, 774 F. Supp. 2d 875, 877 (N.D. Ohio 2011) (quoting *Sarchet v. Chater*, 78 F.3d 305, 307 (7th Cir. 1996) (alteration in original)).

### B.  *Standard for Disability*

The Social Security regulations outline a five-step sequential evaluation process that the ALJ must use in determining whether a claimant is disabled: (1) whether the claimant is engaged in substantial gainful activity; (2) if not, whether the claimant has a severe impairment or combination of impairments; (3) if so, whether that impairment, or combination of impairments, meets or equals any of the listings in 20 C.F.R. § 404, Subpart P, Appendix 1; (4) if not, whether the claimant can perform her past relevant work in light of his RFC; and (5) if not, whether, based on the claimant's age, education, and work experience, he can perform other work found in the national economy. 20 C.F.R. § 404.1520(a)(4)(i)-(v); *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 642-43 (6th Cir. 2006). The claimant bears the ultimate burden of producing sufficient

evidence to prove that he is disabled and, thus, entitled to benefits. 20 C.F.R. § 404.1512(a). Specifically, the claimant has the burden of proof in Steps One through Four. *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997). The burden shifts to the Commissioner at Step Five to establish whether the claimant has the RFC to perform available work in the national economy. *Id.*

### C.  *Subjective Symptoms Assessment (SSR 16-3p)*

A claimant's subjective symptom complaints may support a disability finding only when objective medical evidence confirms the alleged severity of the symptoms. *Blankenship v. Bowen*, 874 F.2d 1116, 1123 (6th Cir. 1989). An ALJ is not required to accept a claimant's subjective symptom complaints, however, and may properly discount the claimant's testimony about his symptoms when it is inconsistent with objective medical and other evidence. *See Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 475-76 (6th Cir. 2003); SSR 16-3p, 2016 SSR LEXIS 4 *15 (Oct. 25, 2017) ("We will consider an individual's statements about the intensity, persistence, and limiting effects of symptoms, and we will evaluate whether the statements are consistent with objective medical evidence and the other evidence."). In evaluating a claimant's subjective symptom complaints, an ALJ may consider several factors, including the claimant's daily activities, the nature of the claimant's symptoms, the claimant's efforts to alleviate his symptoms, the type and efficacy of any treatment, and any other factors concerning the claimant's functional limitations and restrictions. SSR 16-3p, 2016 SSR LEXIS 4 *15-19; 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3); *see also Temples v. Comm'r of Soc. Sec.*, 515 F. App'x 460, 462 (6th Cir. 2013) (stating that an ALJ properly considered a claimant's ability to perform day-to-day activities in determining whether his testimony regarding his pain was credible).

### D.  *Analysis*

Mr. Foley argues in his sole assignment of error that the ALJ erred because the RFC failed to consider the effect of his chronic pain and obesity on his ability to engage in substantial gainful activity on a full-time and sustained basis. Mr. Foley raises two sub-claims: (1) the ALJ failed to consider the combination of his obesity and other impairments in conjunction with SSR 19-2p; and (2) the ALJ failed to account for Mr. Foley's pain when his rheumatoid arthritis/gout would flare. For the following reasons, I find both sub-claims are without merit.

### 1.  <u>The ALJ Appropriately Considered the Effect of Mr. Foley's Obesity in Determining His Residual Functional Capacity.</u>

Mr. Foley argues in his first sub-claim that the ALJ failed to consider the combination of his obesity and other impairments in conjunction with SSR 19-2p in her RFC assessment. (ECF Doc. 9, PageID#659-64). On May 20, 2019, the Social Security Administration published SSR 19-2p, which rescinded and replaced the guidelines for evaluating obesity under SSR 02-1p. Social Security Ruling 19-2p "provides guidance on how [SSA] establish[es] that a person has a medically determinable impairment of obesity," and how the SSA "evaluate[s] obesity in disability claims." SSR 19-2p, 94 Fed. Reg. 22924, 22924 (May 20, 2019). Significantly, SSR 19-2p provides that "[t]he combined effects of obesity with other impairment(s) may be greater than the effects of each of the impairments considered separately," and that the RFC should account for "the effect obesity has upon the person's ability to perform routine movement and necessary physical activity within the work environment." *Id.* at 22925; *see also Miller v. Comm'r of Soc. Sec.*, 811 F.3d 825, 835 (6th Cir. 2016) (noting that SSR 02-1p, the predecessor to SSR 19-2p, "directs an ALJ to consider the claimant's obesity, in combination with other impairments, at all stages of the sequential evaluation") (citations omitted)

Although Mr. Foley contends that the ALJ did not meet the requirements of SSR 19-2p because the ALJ failed to consider the combined effects of Mr. Foley's obesity and his other

impairments, a review of the ALJ's decision as a whole reveals this argument is not well-taken. *Buckhannon v. Astrue*, 368 F. App'x 674, 678-79 (7th Cir. 2010) (recognizing courts "read the ALJ's decision as a whole and with common sense"); *see also Bryant v. Comm'r of Soc. Sec.*, No. 3:19-cv-0079, 2019 WL 5684456, at *10 (N.D. Ohio Nov. 1, 2019) (same). The ALJ first considered Mr. Foley's obesity and his musculoskeletal impairments and determined that "[n]o treating or examining physician ha[d] indicated findings that would satisfy the severity requirements of any listed impairments." (Tr. 18). The ALJ noted that she considered obesity under the Social Security Rulings, and that obesity "contributes to joint pain, which results in a reduction of exertional and postural abilities." (*Id.*).

Despite finding that Mr. Foley's obesity did not rise to a listing level, the ALJ did not conclude her assessment there. In fact, elsewhere in the decision, the ALJ discussed Mr. Foley's BMI of 42 and noted this BMI would place him in the obese category. (Tr. 19, 21). The ALJ also discussed the advice Mr. Foley received from his doctor to lose weight. (Tr. 20). Significantly, the ALJ even cited some of the evidence that Mr. Foley now points to in support of his argument. For example, the ALJ noted Mr. Foley's November 2020 consultation with pain management physician Mark Pellegrino, M.D. (Tr. 22, 546-48) and Mr. Foley's January 2020 consultation with Paul Shin, M.D., where he was assessed with chronic pain syndrome, diffuse myofascial pain syndrome, chronic back pain, and bilateral thoracic back pain (Tr. 20, 610-11).

Moreover, Mr. Foley's argument also overlooks the fact that the ALJ discounted the opinions of Drs. Neiger and Schultz (the state agency reviewing physicians) in crafting the RFC. Specifically, the ALJ determined that the state agency reviewing physicians' opinions were not persuasive or fully supportable because they "fail[ed] to adequately address the combined effects of low back/joint pain and obesity, which support the need to limit standing/walking to four hours

in an eight-hour workday, with a sit stand option at 30-minute intervals to alleviate pain." (Tr. 24). Furthermore, in consideration of Mr. Foley's obesity, the ALJ set forth further restrictions in the RFC finding. Specifically, the ALJ limited Mr. Foley's lifting, standing/walking, ability to alternate between sitting and standing positions, climbing ramps or stairs, balancing, stooping, kneeling, crouching, and crawling. (*See* Tr. 18). The ALJ also restricted Mr. Foley from climbing ladders, ropes, or scaffolds, and from exposure to workplace hazards such as unprotected heights. (*Id.*). Due to symptoms of Mr. Foley's physical impairments and the side effects of his medication, the ALJ even determined that he could not perform tasks at a production rate pace or with strict production quotas. (*Id.*). Accordingly, reading the decision as a whole, the ALJ adequately considered the effect of Mr. Foley's obesity in crafting the RFC.

While it is unclear from Mr. Foley's argument, to the extent that he attempts to argue that the ALJ should have linked his limitations to his obesity, this argument is unavailing. (*See* ECF Doc. 9, PageID#659-64). "[A]n ALJ is required to explain how the evidence supports the limitations that he or she set forth in the claimant's RFC…[but] is ***not*** required to produce a detailed statement linking each element in the RFC to specific evidence supporting it." *Reed v. Comm'r of Soc. Sec.*, No. 2:16-cv-78, 2017 WL 676369, at *11 (S.D. Ohio Feb. 21, 2017) (citing SSR 96-8p) (emphasis added), *report and recommendation adopted* 2017 WL 1088431 (N.D. Ohio Mar. 23, 2017).

Finally, Mr. Foley has not demonstrated how the evidence he cites regarding obesity suggests that the ALJ did not adequately consider his obesity and its impact on his functional limitation. (*See generally* ECF Doc. 9, PageID#660-64). In situations where the potential impact of obesity was described far more generally, the Sixth Circuit has recognized that "[t]he absence of further elaboration on the issue of obesity likely stems from the fact that [plaintiff] failed to

present evidence of any functional limitations resulting specifically from her obesity." *Essary v. Comm'r of Soc. Sec.*, 114 Fed. App'x 662, 667 (6th Cir. 2004) (citing *Forte v. Barnhart*, 377 F. 3d 892, 896 (8th Cir. 2004) (rejecting "argument that the ALJ erred in failing to consider his obesity in assessing his RFC," because "[a]lthough his treating doctors noted that [the claimant] was obese and should lose weight, none of them suggested his obesity imposed any additional work-related limitations, and he did not testify that his obesity imposed additional restrictions")); *see also Gray v. Comm'r of Soc. Sec.*, No. 20-10099, 2021 WL 298826, at *6 (E.D. Mich. Jan. 11, 2021) (finding limited findings regarding obesity sufficient where "there is no medical evidence in the record indicating that [plaintiff's] obesity increase the severity of her functional limitations or other impairments"), *report and recommendation adopted*, No. 20-10099, 2021 WL 289422 (E.D. Mich. Jan. 28, 2021); *Reese v. Comm'r of Soc. Sec.*, No. 5:20-cv-2385, 2022 WL 1090538, at *27 (N.D. Ohio Jan. 32, 2022).

Here, Mr. Foley has failed to point to medical opinions that indicate greater functional limitations due to obesity or cite evidence that demonstrates greater functional limitations. (*See generally* ECF Doc. 9, PageID#659-64). Mr. Foley failed to satisfy his burden at Step Three to show "specifically how his obesity, in combination with other impairments, limited his ability to a degree inconsistent with the ALJ's RFC determination." *Lumpkin v. Comm'r of Soc. Sec.*, No. 1:20-cv-01849-DAP, 2021 WL 5828692, at *7 (N.D. Ohio Oct. 6, 2021) (citing *Foss v. Comm'r of Soc. Sec.*, No. 1:16-cv-1907, 2017 WL 2912524, at *8 (N.D. Ohio June 20, 2017), *report and recommendation adopted* 2017 WL 2908857 (N.D. Ohio July 7, 2016). Because Mr. Foley failed to offer evidence demonstrating that the ALJ's analysis or conclusions were in error, I recommend that the Court reject this assignment of error. *McWilliams v. Comm'r of Soc. Sec.*, No. 5:19-cv-2363, 2020 WL 7684864, at *12 (N.D. Ohio Aug. 26, 2020) ("Plaintiff's speculation that the ALJ

17

was obligated to conclude that the combined impact of his obesity caused additional but unspecified functional limitations beyond those already accounted for in the RFC does not provide a basis for reversal.").

## 2. The ALJ Provided Substantial Evidence in Support of Her Assessment of Mr. Foley's Alleged Symptoms.

Mr. Foley argues in his next sub-claim that the ALJ erred because she failed to account for Mr. Foley's pain when his rheumatoid arthritis/gout would flare. (ECF Doc. 9, PageID#664-66). Mr. Foley asserts that the record evidence supports the fact that he had pain issues that interfered with his ability to sustain activities. (*Id.* at PageID#665). This assertion, however, overlooks the entire analysis the ALJ's conducted regarding Mr. Foley's alleged symptoms.

The ALJ presented substantial evidence in first assessing Mr. Foley's symptoms and allegations of pain and then discounting them. In discussing Mr. Foley's alleged symptoms, the ALJ addressed several factors outlined in 20 C.F.R. §§ 404.1529, 416.929; SSR 16-3p. For example, the ALJ discussed the location, duration, frequency, and intensity of Mr. Foley's symptoms. 20 C.F.R. § 404.1529(c)(3)(ii). Specifically, the ALJ noted Mr. Foley's testimony that he experienced chronic right shoulder pain, spinal degeneration, and arthritis in his hands, knees, and feet. (Tr. 19, 39, 52). The ALJ also consider precipitating and aggravating factors by discussing how his spinal degeneration and arthritis in his hands, knees, and feet limited lifting, carrying, sitting, standing, and walking. (Tr. 19, 604); 20 C.F.R. § 404.1529(c)(3)(iii). The ALJ, however, determined that Mr. Foley's statements were not consistent with the record evidence by pointing to exam findings that Mr. Foley had normal gait, negative straight leg raise, 5/5 strength, and no deficits of sensation or reflexes. (Tr. 19-22, 351, 410, 416-17, 448, 478, 514-15, 605, 610).[3]

---

[3] Mr. Foley, in his Reply Brief, asserts that the Commissioner cited "to [Mr. Foley's] testimony but not the medical evidence supporting his claims." (ECF Doc. 11, PageID#693-94). Thus, he contends that the Commissioner is providing a *post hoc* rationalization. (*Id.* at PageID#694). But as discussed throughout this Report and

The ALJ also considered treatment, other than medication, that Mr. Foley received for his pain. Specifically, the ALJ stated that Mr. Foley was treated conservatively and "was often noncompliant in several aspects of [his] treatment." (Tr. 22). Throughout her opinion, the ALJ referenced occasions where Mr. Foley was noncompliant with aspects of medical treatments recommended by his physicians. (Tr. 20-21, 351, 410, 416-17, 448, 462, 464, 478, 514-15, 605, 610). Notably, for example, Dr. Cain ordered physical therapy for Mr. Foley's pain, but the ALJ observed that Mr. Foley was noncompliant and did not follow through with his recommended physical therapy. (Tr. 20, 406-412).

To the extent that Mr. Foley asserts that the ALJ's consideration of noncompliance is inappropriate, this claim would be unsupported by case law. Courts within the Sixth Circuit have found a claimant's noncompliance with ordered physical therapy is a valid reason for discounting a claimant's alleged pain symptoms. As the Sixth Circuit has recognized, "[i]n the ordinary course, when a claimant alleges pain so severe as to be disabling, there is a reasonable expectation that a claimant will seek examination or treatment. A failure to do so may cast doubt on a claimant's assertions of disabling pain." *Strong v. Soc. Sec. Admin.*, 88 F. App'x 841, 846 (6th Cir. 2004); *see also Simpson v. Comm'r of Soc. Sec.*, No. 1:14-cv-801, 2016 WL 74420, at *11 (S.D. Ohio Jan. 6, 2016) (finding that the ALJ reasonably relied on the claimant's pain management treatment in discounting the claimant's pain complaints because "[t]he record [did] not show that plaintiff followed through on her treating orthopedist's suggestions despite her complaints of disabling pain"); *McKenzie v. Comm'r of Soc. Sec.*, 2000 WL 687680, at *4 (6th Cir. May 19, 2000)

---

Recommendation, the ALJ relied on the evidence discussed throughout the ALJ's decision to assess Mr. Foley's symptoms and make a final determination.  (*See generally* Tr. 19-23); *see also Walker v. Comm'r of Soc. Sec.*, No. 1:21-cv-01474-JG, 2022 WL 2612244, at *13 (N.D. Ohio 2022) ("Although the Court acknowledges that the ALJ did not explain her rationale in a single succinct paragraph, the ALJ did explain her decision and support her conclusion in a manner which aided the Court in understanding the reasons the ALJ did not accept the entirety of [the claimant's] subjective complaints. This is sufficient."), *report and recommendation adopted* 2022 WL 4479922 (Sept. 27, 2022).

("Plaintiff's complaints of disabling pain are undermined by his non aggressive treatment."); *Hatcher v. Berryhill*, No. 1:18CV1123, 2019 WL 1382288, at *13-14 (N.D. Ohio Mar. 27, 2019).

And to the extent that Mr. Foley relies solely on his administrative hearing testimony to support his assertions, this attempt should be rejected. *See* SSR 16-3p, 2017 WL 5180304, at *2 ("Under our regulations, an individual's statements of symptoms alone are not enough to establish the existence of a physical or mental impairment or disability."). As outlined above, the ALJ rejected Mr. Foley's statements because the records did not support his allegations of disability. Specifically, the ALJ noted his conservative treatment and noncompliance with recommended treatment. (Tr. 22). While noting that "some" objective evidence and consistent reports of pain establish some work-related limitations, the ALJ ultimately concluded that the relatively normal clinical exams, normal gait at most visits, 5/5 strength, and no deficits of sensation or reflexes are consistent with the ability to perform work within the RFC the ALJ provided. (*Id.*). And the ALJ further stated that Mr. Foley's use of a non-prescribed motorized scooter at one office visit does not establish the need for such a device, "particularly in light of the long history of normal gait during nearly all office visits." (Tr. 22-23).

Finally, the presence of some evidence that support a claimant's position is not alone a sufficient reason for a remand. So long as the ALJ's decision is supported by substantial evidence, "we must defer to that decision 'even if there is substantial evidence in the record that would have supported an opposite conclusion.'" *Collins v. Comm'r of Soc. Sec.*, 357 F. App'x 663, 667 (6th Cir. 2009) (quoting *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004)).

As demonstrated above, the ALJ provided ample substantial evidence in the record to support her decision. Moreover, the ALJ provided an adequate explanation of her reasoning for discounting Mr. Foley's alleged pain symptoms. This explanation was more than adequate "to

allow the appellate court to trace the path of [her] reasoning." *Stacey v. Comm'r of Soc. Sec.*, 451 F. App'x 517, 519 (6th Cir. 2011) (quoting *Diaz v. Chater*, 55 F.3d 300, 307 (7th Cir. 1995)). Thus, I find that this sub-claim is without merit. Accordingly, I recommend that the Court reject Mr. Foley's assignment of error.

## VI. RECOMMENDATION

Based on the foregoing, I RECOMMEND that the Court OVERRULE Mr. Foley's assignment of error and AFFIRM the ALJ's decision.

Dated: April 12, 2023

*s/ Jennifer Dowdell Armstrong*
Jennifer Dowdell Armstrong
United States Magistrate Judge

## VII. NOTICE TO PARTIES REGARDING OBJECTIONS

Local Rule 72.3(b) of this Court provides:

**Any party may object to a Magistrate Judge's proposed findings, recommendations or report made pursuant to Fed. R. Civ. P. 72(b) within fourteen (14) days after being served with a copy thereof, and failure to file timely objections within the fourteen (14) day period shall constitute a waiver of subsequent review, absent a showing of good cause for such failure**. Such party shall file with the Clerk of Court, and serve on the Magistrate Judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations, or report to which objection is made and the basis for such objections. **Any party may respond to another party's objections within fourteen (14) days after being served with a copy thereof.** The District Judge to whom the case was assigned shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the Magistrate Judge. The District Judge need conduct a new hearing only in such District Judge's discretion or where required by law, and may consider the record developed before the Magistrate Judge, making a determination on the basis of the record. The District Judge may also receive further evidence, recall witnesses or recommit the matter to the Magistrate Judge with instructions.

*Id.* (emphasis added).

Failure to file objections within the specified time may result in the forfeiture or waiver of the right to raise the issue on appeal either to the district judge or in a subsequent appeal to the United States Court of Appeals, depending on how or whether the party responds

to the report and recommendation. *Berkshire v. Dahl*, 928 F.3d 520, 530 (6th Cir. 2019). Objections must be specific and not merely indicate a general objection to the entirety of the report and recommendation; a general objection has the same effect as would a failure to object. *Howard v. Sec'y of Health and Hum. Servs.*, 932 F.2d 505, 509 (6th Cir. 1991).

Stated differently, objections should focus on specific concerns and not merely restate the arguments in briefs submitted to the magistrate judge. "A reexamination of the exact same argument that was presented to the Magistrate Judge without specific objections 'wastes judicial resources rather than saving them, and runs contrary to the purpose of the Magistrates Act.'" *Overholt v. Green*, No. 1:17-CV-00186, 2018 WL 3018175, *2 (W.D. Ky. June 15, 2018) (quoting *Howard*). The failure to assert specific objections may in rare cases be excused in the interest of justice. *See United States v. Wandahsega*, 924 F.3d 868, 878-79 (6th Cir. 2019).